PLOTKIN, Judge.
James Johnson (Johnson) appeals the decision of the New Orleans Civil Service Commission affirming his dismissal from the New Orleans Department of Police (the Department). This court must determine whether the Department met its burden of showing that it had probable cause to administer a blood-alcohol breathalyzer test to Johnson.
On February 23, 1989, while on duty, Johnson was ordered to submit to a blood-alcohol breathalyzer test. Johnson’s blood-alcohol level measured .103 percent. In a letter dated the same day, Johnson’s police commission was revoked, and he was placed on suspension.
In a letter dated April 10, 1989, Johnson’s employment with the Department was terminated, effective April 13, 1989. The letter explained that Johnson had entered East Lake Hospital Clinic on March 1, 1989 for substance abuse, but had failed to complete his treatment. The letter also set forth the department rules which Johnson was found to have violated, and advised Johnson that he had a right to appeal his termination to the New Orleans Civil Service Commission (the CSC) within thirty days.
Johnson appealed, and a hearing was held before the CSC on August 14, 1989.[1] On November 22, 1989, the CSC affirmed Johnson’s dismissal. In Johnson v. Dept. of Police, 575 So.2d 440 (La.App. 4th Cir. 1991), this court reversed the decision of the CSC, finding that the Department had produced no evidence to support the factual basis for its disciplinary action. We remanded for further proceedings consistent with our opinion.
On November 21, 1991, a hearing was held before a CSC hearing examiner at which the Department was given an opportunity to produce evidence supporting its disciplinary action. At this hearing, the hearing examiner heard testimony from Johnson and three police officers.
First, Officer Daniel Mack testified that he administered a breathalyzer test to Johnson at 10:49 a.m. on February 23, 1989, and that Johnson registered a blood-alcohol level of .103 percent. Mack stated that he was certified to operate the Department’s breathalyzer and produced a card verifying his certification. Counsel for Johnson objected to the testimony of Mack, arguing that the Department had failed to establish that it had probable cause to administer the test. The hearing examiner allowed the testimony, subject to the Department connecting it up by showing probable cause.
On cross-examination, Mack testified that he could not remember whether Johnson had alcohol on his breath when he gave Johnson the breathalyzer test. Mack also testified that Johnson had been cooperative, had not been obnoxious or offensive, and was not “slobbering over himself” or “falling-down drunk.”
Next, the Department called Lieutenant Howard Robertson, Johnson’s platoon lieutenant. Lieutenant Robertson testified that Johnson had reported late for work on the morning of February 23, 1989, and was advised to fill out interoffice correspondence explaining why he was late. Later *1066 that morning, Johnson reported for a scheduled meeting with Robertson and Captain Mitchell Dussett to discuss Johnson’s yearly evaluation. Robertson stated:
When he [Johnson] came in, we sat in the Captain’s office and started discussing his yearly evaluation. At that time, the Captain passed me a note and on note it read, “Is this officer intoxicated?”
Counsel for Johnson objected to this statement as hearsay. The hearing examiner overruled the objection, stating that Robertson was merely testifying as to what had occurred and that the note was not probative of Johnson’s intoxication. Robertson then testified as follows:
Counsel: On that particular day, during that meeting, did you have the occasion to smell the breath of the Appellant?
Robertson: Yes, sir, we did.
Counsel: And did it smell of alcohol? Robertson: Yes, sir, it did.
Counsel: As a result of this smelling of alcohol on the Appellant’s breath, what action did you take?
Robertson: We contacted the AI [Accident Investigation] Unit, Sgt. Danny Mack, and requested that the breathalyzer test be given....
On cross examination, Robertson testified that when he first saw Johnson, he did not notice Johnson walking erratically, staggering, or acting in an offensive or obnoxious way. Robertson also stated that Johnson had been issued a patrol car between the time he reported for duty and the time of his meeting with Captain Dus-sett.
The Department then called Johnson’s platoon sergeant, James Willem. Sergeant Willem testified that he had seen Johnson in the morning, when Johnson reported late for work, and asked him to fill out interoffice correspondence explaining why he had been late. Johnson never completed this correspondence. Willem also spoke to Johnson briefly when Johnson returned to the station for his meeting with Dussett and Robertson. After the meeting, Willem brought Johnson to the Accident Investigation Unit for his breathalyzer test. When asked whether he had smelled alcohol on Johnson’s breath, Willem testified that he could hardly smell anything due to a severe sinus problem. However, Willem testified that Johnson did not appear to be intoxicated.
On cross examination, Willem testified that he had authority to issue the keys to the patrol vehicles. He also reiterated his testimony that Johnson did not appear to be intoxicated.
Finally, the Department called Johnson. Counsel for Johnson objected to the Department calling Johnson for the purpose of meeting their burden of proof. The objection was overruled, but the hearing examiner advised Johnson that he could take the stand and refuse to testify. Johnson took the stand and testified that he had been admitted to East Lake Hospital following his suspension. When asked whether, at the meeting with Dussett and Robertson to discuss his yearly evaluation, Johnson had admitted to drinking the night before, Johnson testified:
He asked me, okay, because of me being loud, he said, “What’s the matter, have you been drinking or something?” And I said, “Yeah, I had been drinking last night.” And that was it.
On March 26, 1992, the Civil Service Commission affirmed Johnson’s dismissal from the department, finding that the Department had shown that it had cause to administer the breathalyzer test. Johnson brought this appeal. We affirm.
Johnson argues that the Department failed to show that it had probable cause to administer a breathalyzer test, and that the results of the test were therefore inadmissible. We disagree. At the hearing before the CSC hearing examiner, Lieutenant Robertson testified that he smelled alcohol on Johnson’s breath during a meeting with Johnson and Captain Dussett. Johnson testified that during this meeting he admitted to Dussett and Robertson that he had been drinking the night before. Under these circumstances, the CSC’s conclusion that the Department had probable cause to test Officer Johnson for sobriety was not *1067 arbitrary, capricious, or an abuse of discretion.
Department of Police Rule 3, paragraph 6, use of alcohol on duty, provides:
Members shall not appear for duty, or be on duty, while under the influence of intoxicants to any degree whatsoever, or with an odor of intoxicants on their breath.
The Department has shown that it had probable cause to test Johnson for sobriety, that Johnson submitted to a breathalyzer test, and that Johnson was found to have a blood-alcohol level of .103 percent, in violation of department rules. The decision of the CSC affirming Johnson’s dismissal from the Department of Police is therefore affirmed.
AFFIRMED.

. The transcript of this hearing does not appear in the record.